IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 1:18-cv-01794-RM

CATHY COLGAN,

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

___

# ORDER
___

This matter is before the Court on Plaintiff's request for judicial review under 42 U.S.C. § 405(g) of Defendant's denial of her application for disability insurance benefits. (ECF No. 1.) The parties have fully briefed the matter. (ECF Nos. 16, 17, 18.) The Court has reviewed the pleadings, case file, and applicable law. For the reasons stated below, the Court vacates the Commissioner's decision and remands this matter for further proceedings.

## I.    BACKGROUND

Plaintiff filed her application in October 2015, alleging disability beginning on September 3, 2015. In December 2017, after a hearing at which Plaintiff testified and was represented by counsel, an administrative law judge ("ALJ") denied her claim.

The ALJ applied the five-step process for evaluating disability claims. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, the ALJ

determined Plaintiff had the following severe impairments: lumbar disc disease, status post lumbar decompression and fusion, history of left shoulder arthroscopy, type II diabetes mellitus with peripheral neuropathy, chronic obstructive pulmonary disease with left extremity edema, and morbid obesity. At step three, the ALJ determined Plaintiff's physical and mental impairments, considered independently and in combination, did not meet or equal the severity of a listed impairment.

Before reaching step four, the ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, subject to limitations. The applicable regulation provides the following definition:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). The ALJ further limited Plaintiff's RFC as follows:

> [Plaintiff] requires the use of a handheld cane when ambulating, and can carry only small objects of less than 10 pounds in the non-dominant upper extremity when ambulating. [Plaintiff] can frequently reach with the non-dominant left upper extremity. [Plaintiff] can never operate foot controls, can never climb or balance on uneven terrain; and can never stoop, kneel, crouch, and crawl. [Plaintiff] can never be exposed to unprotected heights or moving mechanical parts. [Plaintiff] cannot operate a motor vehicle as part of work duties.

(ECF No. 10-2 at 21, ¶ 5.)

At step four, the ALJ determined Plaintiff could perform her past relevant work as a customer service representative because such work does not require activities precluded by her RFC. Therefore, the ALJ determined Plaintiff was not entitled to disability insurance benefits without reaching step five.

The Appeals Council denied review, making the ALJ's decision final. *See* 20 C.F.R. § 404.981. Plaintiff argues the ALJ erred by (1) failing to evaluate properly the medical evidence and source opinions, (2) failing to evaluate properly her subjective reports, and (3) finding that she could perform her past relevant work.

## II. LEGAL STANDARD

The Court reviews the ALJ's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Wall*, 561 F.3d at 1052 (quotation omitted). To determine whether the substantiality test has been met, the Court meticulously examines the record as a whole, including anything that may undercut or detract from the ALJ's findings, but the Court does not reweigh the evidence or retry the case. *Id.* "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation omitted).

## III. DISCUSSION

### A. Evaluation of Medical Evidence and Source Opinions

Plaintiff contends the ALJ erred by relying on a June 2017 report by a treating physician stating that she had been released to work full time. (ECF No. 10-15 at 37.) The Court agrees.

The ALJ's decision states that "[i]n June, treatment notes reflected that the claimant had been released back to work for 40 hours per week." (ECF No. 10-2 at 24.) But the June 2017

3

report cited to support that statement states that Plaintiff had "been released . . . back to work for 40 hours [per week] *due to a[n] error*." (ECF No. 10-15 at 37 (emphasis added).)  When asked about the June 2017 report at the hearing, Plaintiff explained that in March 2016 her insurance carrier had obtained a letter with the stamped signature of her orthopedic surgeon stating that she could return to work full time, even though he "hadn't actually released [her] at all." (ECF No. 10-2 at 38-39.)  According to Plaintiff, the orthopedic surgeon later sent a letter to the insurance carrier stating that he did not actually release Plaintiff to work full time.  A May 2017 report by the orthopedic surgeon corroborates Plaintiff's account: "Confusion stems from a stamped signature generated by her carrier . . . stating that she can return to full-time sedentary duty.  Again, this is a stamped signature and I do not have documentation supporting that decision.  I do have documentation dated 12/15/2016 supporting return to work part-time." (ECF No. 10-15 at 34.)  At the hearing, the ALJ asked Plaintiff's counsel why the letters were not in the record.  Plaintiff's counsel responded that he submitted everything the orthopedic surgeon sent and that Plaintiff did not have any other records pertaining to the release.

Given this background, the statement from the June 2017 report is clearly taken out of context in the ALJ's decision.  Although Plaintiff bears some blame for an underdeveloped record on this issue, the ALJ should not have included the statement without qualification or explanation.  The ALJ made no other findings as to when Plaintiff was released to work full time.  Nor did the ALJ explain the weight it gave to the release or its significance with respect to Plaintiff's RFC.  "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).  Although Defendant argues that "the ALJ does not appear to have attached any special significance to the

4

notation" (ECF No. 17 at 16), the ALJ's decision does not provide enough discussion or analysis for the Court to determine whether the ALJ discharged that duty in this case. On remand, the ALJ should articulate what effect, if any, the release has on determining Plaintiff's RFC.

Plaintiff also argues the ALJ erred by not including in her RFC a recommendation by a treating physician that she needed to elevate her legs. Again, the Court agrees that error exists with respect to this issue.

As noted by the ALJ, in September 2016 Plaintiff reported problems with swelling of her legs, and in November of that year "[s]he was diagnosed with lower extremity edema with recommended daily use of compression hose and elevation of legs when not standing." (ECF No. 10-2 at 23-24.) The November 2016 report recommends "daily use of compression hose and elevation of legs when not standing" but does not specify how often or for how long Plaintiff needed to elevate her legs. (ECF No. 10-14 at 49.) Generally, a treating physician's medical opinion "must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). The ALJ's decision does not explain how Plaintiff could follow this recommendation while meeting the requirements for sedentary work with the additional limitations imposed.

Defendant argues, without citing any relevant authority, that the recommendation amounts to "treatment advice" that the ALJ was not required to weigh. (ECF No. 17 at 8.) But the Court is not persuaded that the recommendation, which directly pertains to one of Plaintiff's severe impairments, may be so easily brushed aside. Defendant's contention that the recommendation "was only relevant to a brief period of time—several months, at most" is also

unavailing. (*Id.*) Defendant points to no evidence that the recommendation was lifted or that Plaintiff's edema was successfully managed to the point where it ceased to be a severe impairment. In any event, the ALJ made no findings as to any durational limits, and despite multiple references to the recommendation in the decision, it does not appear to have been incorporated into Plaintiff's RFC or have its absence explained.

The ALJ gave significant weight to the September 2017 report by a consulting examiner who opined that Plaintiff could sit for eight hours, stand for three hours, and walk for three hours in an eight-hour workday. But the report also noted that Plaintiff would need to be "[s]itting, laying down with legs elevated" if the total time sitting, standing, or walking did not equal or exceed eight hours. The significance of this notation is ambiguous given the consulting examiner's determination that Plaintiff could sit, stand, or walk for a total of fourteen hours in an eight-hour workday, yet the ALJ made no attempt to resolve this ambiguity. Due to the lack of analysis regarding Plaintiff's need to elevate her legs, it is not clear whether the consulting examiner's opinion is consistent with the other medical evidence or the ALJ's determination that Plaintiff could perform sedentary work with certain limitations. "[A] court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007). Accordingly, this aspect of the ALJ's decision provides an additional ground to remand the case for further proceedings.

In addition, to support her argument that the ALJ did not properly evaluate the medical opinion evidence, Plaintiff cites a February 2015 report by her orthopedic surgeon that the ALJ failed to consider. In that report, the orthopedic surgeon opined that she could never lift or carry

ten pounds or more, could sit for only twenty minutes at one time, could stand and walk for only ten minutes at one time, and could sit for only forty minutes and stand and walk for only fifteen minutes in an eight-hour workday. (ECF No. 10-13 at 3-4.) Although the report was written seven months before the date of Plaintiff's alleged disability, the ALJ's failure to address this report and the limitations contained in it reinforces the Court's conclusion that a remand is warranted in this case. *See Krauser*, 638 F.3d at 1330.

B. **Plaintiff's Subjective Reports**

Plaintiff argues the ALJ overstated her capabilities by not properly evaluating her subjective reports about her activities of daily living ("ADLs"). Although most of the ALJ's findings on Plaintiff's ADLs are supported by substantial evidence, there is one detail the ALJ appears to have gotten wrong, and Defendant concedes that the ALJ made a "minor mistake." (ECF No. 17 at 12.) Though not a ground for reversal on its own, this issue warrants more careful attention on remand.

The ALJ's decision includes the following summary of Plaintiff's ADLs based a function report she submitted in December 2015: "The claimant reported the ability to prepare her own meals on a daily basis, could fold clothes, and could go outside 2-3 days per week and travel by driving or riding in a car. She stated that she was able to go out alone, could shop in stores for groceries and basic necessities, could care for her own financial affairs, and could spend time with others." (ECF No. 10-2 at 25.) The ALJ also considered a September 2017 report by the consultative examiner that reached slightly different conclusions about Plaintiff's ADLs at that point in time. That report indicated Plaintiff could get in and out of bed, dress and bathe herself, and cook, but it also concluded she *could not* drive and clean for herself. (ECF No. 10-14 at 84.)

Accordingly, on remand the ALJ should reconsider or explain the factual basis for the determination that Plaintiff "could cook and clean for herself." (ECF No. 10-2 at 25 (citing the September 2017 report).)

### C. Past Relevant Work

Plaintiff contends the ALJ erred by determining that she could perform her past relevant work as a customer service representative. The ALJ asked the vocational expert whether an individual with Plaintiff's RFC could perform such work if "the individual, due to the need to periodically elevate the lower extremities and switch positions, if that caused the individual to be off task on average 20 percent of the workday." (ECF No. 10-2 at 56.) The vocational expert answered no.

As discussed above, the ALJ made no findings about Plaintiff's need to elevate her legs that would provide a basis for evaluating whether the vocational expert's response to this seemingly arbitrary hypothetical requires a different result. The ALJ did not explain the genesis of the twenty percent figure, and on the current record, the Court cannot determine whether this hypothetical provides a basis for concluding Plaintiff was precluded performing her past relevant work. On remand, after clarifying the extent to which Plaintiff's RFC needs to be further limited, if at all, due to her need to elevate her feet, the ALJ should formulate appropriate questions for the vocational expert that would allow this Court to review the matter.

### D. Other Arguments

Because a remand is warranted based on the reasons already stated, the Court need not reach Plaintiff's additional arguments that the ALJ erred by stating that Plaintiff's treatment was "generally conservative in nature" and that some of the clinical findings to support her claim

were "mild" (ECF No. 16 at 7); by making statements about the medical findings that were "unreasonable" (*id.*); by not adequately addressing the effect of her obesity in combination with her other impairments (*id.* at 13); and by ignoring "qualifying statements" Plaintiff made about her ADLs (*id.* at 15). It is not clear the extent to which these issues will arise again, so the Court makes no determinations about Plaintiff's additional contentions here.

## IV. CONCLUSION

The Court VACATES the denial of Plaintiff's application for disability insurance benefits and REMANDS this matter for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 1st day of July, 2019.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge